IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 17-50297 |
| **MICHAEL W. DECKER** ) | Chapter 7 |
| ) | |
| Debtor. ) | |

**MOTION TO QUASH SUBPOENA *DUCES TECUM*
TO WINCHESTER ACCOUNTING, LLC AND SUSTAIN
DEBTOR'S OBJECTIONS TO DISCOVERY REQUESTS**

COMES NOW the Debtor, Michael W. Decker, by counsel, and pursuant to Rule 45 of the Federal Rules of Civil Procedure moves this Court to quash the Subpoena *Duces Tecum* issued to Winchester Accounting, LLC and sustain the Debtor's objections to discovery requests, for the reasons set forth hereinbelow.

**I.    Introduction**

Michael W. Decker ("Debtor") filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code on March 30, 2017.  Prior to the Debtor appearing at his 341 hearing the Debtor's largest creditor, Kilmer & Associates CPA, PC ("Kilmer") served a subpoena *duces tecum* on the Debtor requesting copies of certain financial documents of the Debtor and his firm, Winchester Accounting and Consulting, Inc.  The Debtor produced to Kilmer and also to the Trustee approximately 1,964 pages of documents in response to the subpoena including, but not limited to bank statements, tax returns, profit and loss statements and payroll returns for Winchester Accounting and Consulting, Inc.

On June 26, 2017 a Complaint against dischargeability ("Adversary Proceeding") was filed by Kilmer. A trial convened on March 19, 2018[1] and at the conclusion of evidence and testimony by Kilmer, Debtor moved the Court for judgment on the pleadings pursuant to Rule 52, which Motion was granted by the Court. The Adversary Proceeding was dismissed with prejudice, and the Court granted the Debtor's discharge on April 11, 2018.

On July 24, 2017 the Trustee filed a Motion to Sell [Doc 22] Winchester Accounting and Consulting Inc., a subchapter S corporation utilized by the Debtor, Michael W. Decker for his sole practitioner accounting practice and a hearing on the Motion to Sell was scheduled for August 16, 2017.[2] The proposed sales price for the practice is $5,000. Debtor filed an Opposition to the Motion to Sell [Doc 23] and has also provided substantial authority to the Trustee, that the post-petition earnings of the Debtor and of Winchester Accounting and Consulting, Inc. are not property of the Chapter 7 bankruptcy estate. Still after almost a year and a half, the Motion to Sell has not been resolved.

The history of the instant dispute arose in late September 2018 when the Trustee, through his counsel, served Interrogatories upon Michael Decker largely related to the post-petition activities of Winchester Accounting and Consulting, Inc. and the limited liability company known as Winchester Accounting, LLC

---

[1] Although named as a party Defendant to the Adversary Proceeding, the Trustee did not appear at trial.
[2] The hearing has been continued on five (5) occasions.

2

formed in August 2017, after the trustee sought to sell Winchester Accounting and Consulting, LLC.

Most notably, the Interrogatories sought the identity of clients of both companies from January 1, 2017 (pre-petition) through the date of the Interrogatory, which was 18 months post-petition. By way of example, Interrogatory Nos. 4 and 5 sought the identity and scope of work for all clients of both companies from January 1, 2017 to present. Debtor objected to the discovery on the basis that post-petition income is not part of the bankruptcy estate, and the discovery denies the Debtor the fresh start promised by Congress in the Bankruptcy Code. See Exhibit A attached hereto. Rather than seek to overrule the Debtor's objections and have this issue determined by this Court, the Trustee served a subpoena *duces tecum* on Winchester Accounting, LLC directed to the same issues.

Debtor seeks an Order of this Court quashing the subpoena *duces tecum* served upon him as registered agent for Winchester Accounting, LLC, and sustaining the Debtor's objections to discovery addressing Debtor's post-petition income earned as a solo practitioner of accounting, for the reasons stated hereinbelow.

**II.     Argument**

    **A.     The Debtor's Post-Petition Income is Not a Bankruptcy Asset.**

Following the Trustee's unusual decision to seek the sale of a sole proprietor subchapter S Corporation, the Debtor formed a new entity for his accounting practice. Winchester Accounting and Consulting, Inc. ceased operations in August, 2017 and the Debtor formed Winchester Accounting, LLC. Debtor purchased computers and new equipment for the purpose of operating this new practice.

11 USC 541(a)(6) excludes from a debtor's bankruptcy estate post- petition "earnings from services performed by an individual debtor after the commencement of the case."  The cases interpreting the earnings exception of §541(a)(6) state that wages and earnings generated from services or labor performed post-petition are excluded from a debtor's bankruptcy estate.  See *In re Moyer*, 421 B.R. 587 (Bankr. S.D.Ga. 2007).  The Fourth Circuit has made it clear that debtors are allowed to exclude "any compensation or salary [they] might earn after the petition date."  *Roland v. Unum Life Ins. Co. of America*, 223 B.R. 499 (E.D.Va. 1998)(quoting *In re Andrews*, 80 F.3d 906, 910 (4th Cir. 1996)).

In *Andrews*, the Fourth Circuit noted that §541(a)(6) advances the Bankruptcy Code's goal of permitting the debtor to carry on and rebuild life with a fresh start post-petition. *Andrews* at 909-910.  Section 541(a)(6) allows a bright line to be drawn between pre- and post-bankruptcy filing events. See *id.* at 910.

The *Andrews* court concluded that "§541(a)(6) allows the debtor to exclude from his estate any compensation or salary he might earn after the date of the petition." *Id.* The court emphasized that any conflict is illusory between debtor claiming property for a fresh start and creditors claiming the same property to satisfy the debtors obligation. "[B]y drawing the bright line between the debtor's pre- and post-petition assets, the Bankruptcy Code harmonizes the two purposes." Consistent with this theory, the Bankruptcy Court for the Western District of Virginia held that a debtor's year-end employment bonus was not a part of the estate because the debtor did not have entitlement to the bonus at the time he filed his bankruptcy petition. See *In re Palmer*, 57 B.R. 332 (W.D.Va. Bankr. 1986).

The Bankruptcy Court for the Eastern District of Virginia recognized that the interpretation of §541(a)(6) has been debated in the context of sole proprietorships, but "these cases all address the problem of separating income derived from the business itself, which is in the estate, and income derived from the personal services of the debtor, which is not in the estate." *Roland* at n.4. When funds come entirely from personal services performed for entities not in the estate, "these issues do not apply." *Id.*

*Litzler v. Sholdra* (*In re Sholdra*), 270 B.R. 64 (Bankr. N.D. Texas 2001) applied these concepts to a subchapter S corporation. "The test of whether earnings are excluded from the estate pursuant to Section 541(a)(6) is whether they are produced by the debtor's personal services or by something else."

5

*Sholdra* at 72. Accordingly, courts look to whether the funds are for personal services, whatever form the business entity takes.

Respectfully, the Trustee has no authority or jurisdiction, to inquire of the Debtor's post-petition activities and/or his newly formed accounting firm, Winchester Consulting, LLC.

"Simply put, a debtor is allowed to keep any earnings generated after the commencement of the case, so long as the earnings can be attributed to personal services actually performed by the debtor." *In re Atkinson*, 258 B.R. 769, 774 (Bankr. Idaho 2001). The *Palmer* court noted that, "Congress, by the plain wording of the statute, intended to exclude from property of the estate such sums which are a result of and attributable to services performed by the debtor subsequent to filing of the Bankruptcy petition." *Id.* at 334. The decisive factor is whether sums of money accrue from post-petition services.

### B. Tax Consequences Associated With The Sale Of A Subchapter S Corporation.

In the Debtor's initial Opposition to the Motion to Sell, it was noted that the Trustee did not take into consideration, in any respect, the tax impacts of selling a business which operates as a Subchapter S corporation. In a Subchapter S corporation tax consequences, and thus tax payment obligations flow to the shareholders, as the corporation from an income tax perspective is a disregarded entity. See Exhibit A to the Opposition to Motion to Sell [Doc 23], *Tax Considerations of Transfers to and Distributions from the C or S Corporation*.

6

A Chapter 7 bankruptcy trustee has a general obligation to file tax returns on behalf of a bankruptcy estate that realizes the threshold amount of gross income required to trigger the filing of a return. *See* U.S. Dep't of Justice Executive Office for U.S. Trustees, *Handbook for Chapter 7 Trustees* 33-34 (April 1992); 1 Lawrence P. King, Collier on Bankruptcy P 8.02[3] (15th ed. 1992); *see also* John D. Howard, *An Overview of the State and Federal Tax Responsibilities of Bankruptcy Trustees and Debtors,* 93 Com. L.J. 43, 46-47. The trustee must file a return for the estate if the estate realizes "gross income . . . not less than the sum of the exemption amount plus the basic standard deduction under section 63(c)(2)(D)." 26 U.S.C.A. § 6012(a)(9) (West 1988). *In re Pflug* 146 B.R. 687 1992 Bankr. LEXIS 1741; see also *Kipperman v. IRS, United States (In re 800Ideas.com, Inc.*, 496 B.R. 165 (9th Cir. BAP)(2013).

Upon the sale of the Debtor's 100% interest in the Subchapter S corporation, tax liabilities are calculated based upon the number of calendar days in the year the selling shareholder owned the stock, as compared to the purchasing shareholder. However, because the sale did not occur in 2017, the Debtor was taxed on all of Winchester Accounting and Consulting, Inc.'s 2017 income and the Debtor paid that tax liability. Consequently, post-petition income is no longer a relevant issue in regard to the Motion to Sell.

### C. Discovery Regarding Post-Petition Earnings Should Be Prohibited.

All documents that reflect the assets of Winchester Accounting and Consulting, Inc. pre-petition have already been produced to the Trustee. However, discovery regarding post-petition earnings and activities, and specifically the earnings and activities of Winchester Consulting, LLC is simply inappropriate. Consequently, the Debtor's objections to discovery should be sustained, and the subpoena *duces tecum* should be quashed.

### D. *Res Judicata* and Collateral Estoppel

The Trustee was a party to the Adversary Proceeding initiated by Kilmer which was litigated before this Court. See Final Order at Doc 55. Kilmer alleged in the Adversary Proceeding that the Debtor undervalued Winchester Accounting & Consulting, Inc. in relation to accounts receivable and work in progress. See Adversary Complaint, Doc 1, paragraphs 69-71.

The Trustee did not elect to actively participate in the Adversary Proceeding. Notwithstanding the foregoing, the Trustee is as bound by the outcome in that proceeding as are Kilmer and the Debtor.

The doctrines of *res judicata* and collateral estoppel are often discussed by way of comparison, and such approach will also be taken here. *Res judicata*, also referred to as "claim preclusion," dictates that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *San Remo Hotel, L.P. v. City and County of*

*San Francisco, Cal.*, 545 U.S. 323, 336 fn.16, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005)(citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)). More fully, *res judicata* provides that

> when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*United States v. Tatum,* 943 F.2d 370, 381 (4th Cir. 1991) (quoting *Comm'r v. Sunnen,* 333 U.S. 591, 597, 68 S. Ct. 715, 92 L. Ed. 898 (1948)). Thus, the doctrine of *res judicata* prohibits parties subject to a final judgment in a previous suit from relitigating issues arising from the same cause of action in later adjudication. *Res judicata* applies where there exists: (1) "a judgment on the merits in a prior suit;" (2) that judgment "resolv[es] claims by the same parties or their privies;" and (3) there is "a subsequent suit based on the same cause of action." *Dresser v. Backus,* 229 F.3d 1142 (4th Cir. 2000)(unpublished table decision)(quoting *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1473 (4th Cir. 1996)).

Under the doctrine of collateral estoppel, or "issue preclusion," if a court has decided an issue of fact or law necessary to a judgment, the determination of that issue of fact or law is conclusive and may not be relitigated in a suit on a different cause of action that involves a party to the initial case against whom the doctrine is asserted where that party had a full and fair opportunity to litigate the

9

issue in the previous case. *San Remo Hotel,* 545 U.S. at 336 fn.16 (citing *Allen,* 449 U.S. at 94); see also *Sedlack v. Braswell Servs. Group,* 134 F.3d 219, 224 (4th Cir. 1998). The doctrine of collateral estoppel requires the moving party establish: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. *Collins v. Pond Creek Mining Co.,* 468 F.3d 213, 217 (4th Cir. 2006)(quoting *Sedlack,* 134 F.3d at 224).

Consequently, to the extent the trustee seeks to documentation relative to the appropriate balance of accounts receivable of Winchester Accounting and Consulting, Inc. and/or work in progress, those issues stand resolved.

WHEREFORE, for the reasons stated hereinabove Debtor respectfully requests this Court enter an Order quashing the subpoena *duces tecum* served on him as Registered Agent for Winchester Accounting, LLC; sustain the Debtor's objections to discovery requests; and such further relief as this Court deems appropriate.

                                            **MICHAEL W. DECKER**
                                            By Counsel

/s/ James P. Campbell
James P. Campbell, Esq. (VSB #25097)
*Campbell Flannery, P.C.*
1602 Village Market Blvd. Suite 225
Leesburg, Virginia  20175
(703) 771-8344/Telephone
(703) 777-1485/Facsimile
*Counsel for the Debtor, Michael W. Decker*

## CERTIFICATE OF SERVICE

I hereby certify that service of a true copy of the foregoing has been made as follows:

| | |
|---|---|
| Type of Service: | Electronic Mail via the United States Bankruptcy Court to all parties requesting notice and First-Class, U.S. Mail to the parties listed below |
| Date of Service: | January 2, 2019 |
| Persons served and address: | W. Stephen Scott, Esq.<br>Post Office Box 1312<br>Charlottesville VA 22902<br><br>William E. Callahan, Jr.<br>LECLAIRRYAN, PLLC<br>1800 Wells Fargo Tower, Drawer 1200<br>Roanoke, Virginia 24006 |
| Item Served: | Motion to Quash Subpoena Duces Tecum to Winchester Accounting, LLC and Sustain Debtor's Objections to Discovery Requests |

/s/ James P. Campbell
James P. Campbell